2-3-5-0-5-7 United States of America versus Timothy Sizemore. Arguments not to exceed 15 minutes per side. Ms. Kalka for appellant. May it please the court, I'm Kelly Kalka and I represent the appellant, Tim Sizemore. I've reserved three minutes for rebuttal. When a district court makes the determination that it's going to go ahead and take away someone's liberty, the information it relies upon to do so must be accurate. In this case, the district court referenced on the record both implicitly and explicitly no less than 14 times its mistaken belief that Mr. Sizemore was warned by law enforcement four times and each time returned to continue running a cockfighting ring. The district court found this to be an aggravating factor that compelled the court to a guideline sentence and imposed an incarceration period of 26 months and a two-year period of supervised release. Why does it seem like an error if it's within guidelines? In other words, I get the misstatement point, but it can be harmless. I'm just wondering. It could be harmless, but not on this record. I think for procedural reasonableness challenges, it is of no consequence whether or not it is in or outside the guideline range. That certainly comes into play on a substantive reasonable challenge, but procedurally speaking, it doesn't. Do we have cases that say in plain air setting, this kind of fact misstatement amounts to plain air when the result is within a guideline sentence? On plain error, I would call your attention to the Robertson case. Robertson, it's a 2020 case. It's not published, but it is out of this circuit, obviously. It is within the guideline, but I would note that it was the statutory cap that the court imposed. With respect to cases below the guideline range, I direct the court's attention to Adams, though note that it's not on plain error. I'm still not sure I know the answer. Is there a plain error case where we reverse within guidelines case? Is it the first one? It's Robertson, yes. That's the one. What happened there? What was the misstatement? The mistake in Robertson was that the district court relied on some unsubstantiated understanding of the source of the defendant's health issues. The defendant in Robertson, Mr. Robertson, had some lung nodules, some underlying potentially cancerous issue, but the district court rendered a sentence based on its mistaken belief that these health issues were somehow tied to Mr. Robertson's criminal lifestyle, his drug use and drinking. Of course, these two things are certainly not tied to one another, but still the district court imposed a sentence based on that mistaken belief that the health issues had some basis or some tie to his criminal conduct. In that case, this court noted that the district court clearly based its sentence off that information and that the record did not demonstrate any other considerations that the court made in imposing a sentence, which the length of the sentence was contingent on that mistaken belief. Would there be one distinction here in that here there were lots of aggravating factors that the court specifically actually listed during the course of the sentencing, so even if the court did rely on this mistaken belief that he was warned four times or however many times to decease from this cockfighting, there were other aggravating factors like the cruelty that was involved and some of the other things that were listed. Is that a distinguishing factor that makes a difference when you compare it to Robertson? No, I don't think it makes a difference here because what I would draw the court's attention to is the transcript on page 688 specifically. First and foremost, the court specifically said the aggravating factors in this case compel a guideline sentence. We know that, but when discussing the aggravating factors, it began with stating here are the aggravating factors I have already mentioned. It began with your stubborn return to criminal conduct, noting four times that law enforcement warned Mr. Sizemore. It continued to list the other aggravating factors Your Honor just referenced, but at the end it says I do find all of that to be aggravating, in particular your stubborn return to criminal conduct. So here, I think the record demonstrates that this specific aggravating factor was the most aggravating for the district court and was what had the most influence on the district court's determination of Mr. Sizemore's sentence. Additionally... So is your suggestion, I'm sorry I know you were in the middle of a thought, but is your suggestion that if the court had not mistakenly believed that he can return multiple times to this behavior, that he potentially could have gotten up a low guideline sentence? Is that really the bottom line here? I think bottom line, yeah. I think the record demonstrates that. I think the court implicitly said so when it stated the aggravating factors in this case compelled the court to a guideline sentence. I think the reasonable interpretation is the inverse of that, but for these aggravating factors, the court might not have been compelled to impose a guideline sentence. Secondly, I think it can be demonstrated when... Did we spell that out in Robertson? I mean, is that how we put it in Robertson? That the prejudice was not getting a below guideline sentence? In Robertson, I don't think that the court... Because that is what's... I have a lot of sympathy for your argument. It seems recidivism is really important. This seems like somebody who's not getting the message, and four versus one, big difference, and it's said over and over. But I must say, on the other hand, I have a lot of cognitive dissonance about saying it's plain air not to have a chance, a better chance at a below guideline sentence, since the whole point of the guidelines are to tell us what the norm is for these circumstances. So it seems like the norm is the opposite of prong four of plain air, a deep injustice. Certainly. And your honor, what I would note... First, I would direct the court's attention to Wilson, and I recognize that that's an above guideline sentence issue, and I appreciate that that's what your honor is taking issue with, the guideline range. But in Wilson, the court noted that the fact that there were other factors at play does not diminish the court's reliance on this aggravating factor. And again, Wilson's decided under plain air. So I think that's really helpful for our purposes here. But with respect to your honor's concerns about the guideline, I think if the court is to look at the other defendants in Mr. Sizemore's case, and utilize that as the starting point here, the guidelines are what they are. It's 24 to 30 months, and we acknowledge that. But no other defendant received a prison sentence here, let alone one within their respective guideline range. But the only other defendant that did, so the singular defendant that did receive a prison sentence, is Mr. Hubbard. And albeit his circumstances we acknowledge are different, but his guideline range is the same. So I would submit that the record here does not demonstrate that there is any specific factor, any particular justifying, distinguishing factor that would justify a departure of over a year. Because Mr. Hubbard's sentence with an identical guideline range was 12 months, whereas Mr. Sizemore's was 26. And again, I acknowledge differing circumstances, but Mr. Hubbard certainly had, according to the record, had a criminal history that launched him within that category. So in some ways they ought to be compared because they have the same guideline range. And I think that would demonstrate that the court would have otherwise been compelled not to impose a guideline sentence. And again, I would just reiterate that the district court noted that it was the aggravating factors here that compelled it. Is he in jail now? Mr. Sizemore? Yeah. Presently, he's at a Cincinnati halfway house. So he's out of jail and on his way to supervised release? Is that what's going on? He is. He's not expected to be released until September. And my understanding of this particular halfway house, it's certainly not on the record, but it's... But the halfway house is not supervised release. It's part of the jail sentence, a six-month sentence. That is exactly right. He still has six months on his sentence. And the halfway house, it's not... Your liberty is still extraordinarily limited. He is not permitted to come and go as he pleases or take visitors as he pleases. So it's still within... Family visitors then? They do on specified dates and times, just as in prison. But this is only a sentencing issue. So we have this pretty tight window here to do something relevant and then the district court would have to do something relevant pretty quickly, right? I would agree, but part of the sentence... It's not against you. I'm just trying to make sure I'm understanding it. No, I think you're right. I think that time is of the essence here, but this court has looked at other similar issues where there is a tight window like that. Part of the sentence is the supervised release, and here the court can mitigate that portion of his sentence, too. So there's an entire six months. And when you're looking at this in the context of Mr. Seismer's... Two years. Two years, okay. So there's still another two years where Mr. Seismer's liberty is restricted. But in the context, there's still six months of imprisonment to go, which is a quarter of his original sentence and of the time he's expected to serve, nearly a third yet to go. So for him, it is important. It is a long period of time. I would note that also this court has found the fourth prong to be established, relying on the First Circuit and Gonzales-Castillo. But I see that I am quickly running out of time, so if Your Honor has no other further questions... You get your rebuttal. Thank you. Thank you, Your Honor. We'll hear from the government. Good morning. May it please the court, Kate Smith on behalf of the United States. I'd like to start by reframing what happened in this sentencing. It was a lengthy, very detailed sentencing, and Judge Davis is completely right. There were a number of aggravating factors for this particular individual. I don't dispute that his stubborn return to cockfighting was an aggravating factor. The court discussed that throughout the pleading. And I want to push back on the court having any misunderstanding as to what that confrontation with law enforcement was. If you look at the first time this comes up, it's in the sealed portion of the hearing, docket entry 207. The district court clearly understood what happened. Mr. Sizemore, after operating Blackberry, he was confronted by three federal agents in January 2020. And almost immediately after, he goes and starts a new pit in Blackberry. It's the second pit. Riverside is the first pit. That is discussed explicitly by the district court correctly. And throughout the hearing, the district court references that January 2020 confrontation and Mr. Sizemore's decision to return to the exact same conduct. What's the mistake the district court is making? Do you think there's a confusion about three officers becomes three times of going back to it after being warned? How did the mistake happen? The first phrase that the district court uses is four times of law enforcement. Now, there's a second confrontation with law enforcement in the record in the presentence report. After Blackberry shuts down, Mr. Sizemore returns to Laurel Creek, another cockfighting operation he had run previously. He gets raided by Kentucky State Police there. So you've got three federal agents in January 2020. You've got a confrontation in January 2022. When the district court judge says four times of law enforcement, if you replace times with members, it's a completely accurate statement. That's what I was starting to think the mistake was. I got it. I think that was the mistake. She says, the district court judge says four warnings a second time. The word four is used in two instances. And I will agree, there were not four confrontations with law enforcement. There were four members of law enforcement involved in the two confrontations, at least. I think that's where things went sideways. That's why, frankly, no one corrected the district court judge. Very experienced defense counsel. He says nothing. It was clear throughout the record that the district court judge understood the record here. She was not making a judgment on an inaccurate fact. Then why were so many of her references aside and in addition to the four times related to multiple returns? The phrase repeated return I think is accurate. What about the phrase multiple? Multiple returns is plural there. Multiple returns. He did. He was confronted by law enforcement. He went to run BlackBerry. Then he went to meetings or confrontations, right? Two? Correct. Two. So he had one early on and then he just kind of continued and stopped ultimately that cockfighting area and went to another one, right? Correct. And then at the second one he was actually confronted too and that was what led to his indictment. So two meetings with law enforcement. But only one return to cockfighting, correct? One return to cockfighting at two different locations. So really... I guess I literally am just trying to get the chronology and the sequence and make sure I understand you. Because after Laurel Creek there was not another return to cockfighting, correct? Correct, Your Honor. Okay. So there was only one return to cockfighting. Yes. And there's actually no evidence in the record that that confrontation with Kentucky State Police led to the indictment. He was indicted a month later federally. That was well in the works. Was there evidence that after that encounter he did more cockfighting? There is no evidence in the record as to what he did between January 15th and February 24th when he was indicted. There's just nothing in the record. You said you wanted to straighten out the record and I want to do that too. I thought you were initially going down the road and trying to show that there actually were two times he was recalcitrant. And it seems to me we've now established there's only one time he was recalcitrant. Is that right? He was confronted by law enforcement in January 2020 and then he two times goes to two different pits to run those pits. But he only was confronted by law enforcement at one of those occasions, January of 2022. The problem with the statements is that it is about being recalcitrant or returning to cockfighting after being warned by government agents that this was wrong. So you've got the very first time, you can't do this. And then you had the very last time, you did it again. But what she's saying, I believe it's 12 times in her articulation, it is about the return, the stubborn return to criminal conduct even after intervention by federal enforcements. You were warned multiple times by law enforcement but continued this stubborn illegal activity. You were warned multiple times and you continued your illegal activity. I just want to make sure we're talking about the same thing. Is it possible that what's going on is it is multiple recalcitrants because after the first warning there are two different cockfights? That's what I'm saying. I know that's what you're saying but is it fair to read what the judge was saying is picking that up? That's what I'm trying to figure out. If you look at how the court describes this, it's accurate. There was a stubborn return to cockfighting. Twice. But only one set of warnings by three people. Correct. And that is on the face of the indictment. Count one is the Riverside conspiracy. At the end of that conspiracy he's confronted by three federal agents. He's told he's under investigation. It's not just a casual you should stop doing this. This is you are under federal investigation for this conduct. And then after that he goes and starts count four. He's the only person in this indictment charged with both conspiracies and he was the one driving the conduct at both locations. So that is a true fact. That is a stubborn return to criminal conduct after federal law enforcement gets involved. I'm struggling with the procedural unreasonable illness looks to whether a court selects a sentence based on a clearly erroneous facts. And I'm reading, for example, that that was the key aggravating factor. That your repeated return to criminal activity after four warnings. And that's where I would ask you to read the sentencing transcript in its entirety. It's only at the very end that the four warnings even get said. You know, the stubborn return is a phrase used throughout. It is mentioned a number of times. This is undoubtedly one of the aggravating factors and it's a true factor. The district court judge makes misstatements when talking about that factor. But when you look at what the record was and how the court discussed, it's clear the district court understood what the actual record was. I'm struggling with the law that says if you make an error and it's a stray comment, all bets are off. It's not a problem. But the question is whether there is an appearance and assuming based on a fact that there is references and decisions being made on an erroneous understanding. And I'm struggling with the times, the references to you were warned four times. I think those are in a number of the 12 and you were warned multiple times. I'm just struggling with seeing that that's a stray comment. What is your best case that this sort of explicit unhappiness that leads to discussion of an aggravating factor, as a matter of fact what she calls the key aggravating factor, would qualify in our case law really as a stray comment at sentencing? Your Honor, and to answer the case law question, I think United States v. Bacon, the court explicitly uses the wrong number. And the appellate court says, but the court earlier used the correct number, 30 months. That was so one time. Yes, Your Honor. Here there is a blend. There is a true aggravating factor here, his stubborn return. When discussing that, of the I think 14 times, two times the district court says four in a way that there could be an inference that's what was meant. I don't think that that was what was meant. I think that's why no one corrected the record here. And then there are two instances of referencing multiple times. Again, was the district court saying three federal agents were there, they warned you multiple times in that one meeting? We don't know based on this record. Do you get to say, here's the inference I want you to draw, and then the defendant's counsel gets to say, no, here's the inference I want you to draw. Isn't it really what on the face of the explanation appears to be exactly what was said? No, Your Honor. And I would say both Gunther and Guthrie to say we're not scrutinizing this record to find a comment that was incorrect and draw an inference from it. The district court judge was in the position to review all of this evidence and to weigh all of these factors. That's what happened here. That's how we ended up with a guideline sentence. We're not, particularly with plain air, there is no... Was there a Bostick statement towards the end of the hearing? In other words, where the judge says, you know, here's what I'm doing, here's the sentence, is there anything you have to say about anything I've said so far? Yes, Your Honor. There was that statement? By the court. By the court, exactly. Yes, I don't recall if she specifically said Bostick, but there was a final, are there any objections? You don't have to say Bostick, but if you ask them for an opportunity to correct anything, that's what we usually require before plain air occurs, and I just want to make sure that happened. Yes, and there were no objections by either side. I would also direct the court to Himes, where, you know, you're looking for an obvious error, an obvious miscarriage of justice. I concede it got muddy at the end when the focus on this stubborn return to cockfighting gets conflated with the four, and if you look at the first time that number even comes up, it's clearly a misstatement. It's not even grammatically correct, and that carries over at the very end. At that point, it was clear Mr. Sizemore was getting a guideline sentence that all of the factors, the mitigating factors in his favor had been considered by the court and that the numerous aggravating factors, which the United States had moved for an upward departure on. I mean, this was a person who was the absolute hub of this industry in Kentucky and the most culpable. I take it, I'm embarrassed I don't remember this, but I take it that Sizemore's counsel asked for below guidelines. Correct. Right. What did they, like non-custodial, what was the number? It was a couple months of intermittent confinement followed by home confinement, and the court did not have under 3553A6 to consider disparities between other defendants in the case. Here, the court did. There were a number of meaningful differences between Mr. Sizemore and co-defendant Hubbard. He only had a three-level leadership enhancement. He was only involved in one of the cockfighting operations. He voluntarily withdrew from that operation prior to prosecution. He had a number of health issues, and he also received a $95,000 fine, a top-of-the-guidelines fine, which was part of his punishment, and he received a year and a day as opposed to Mr. Sizemore's 26 months. Do you have another, any other cases, because Himes is the case from which the one stray comment at sentencing language comes, which I think is problematic as a comparator here, because it's clearly not one stray comment. It's 14 comments. It's not 14, Your Honor, respectfully. If you look through every reference to the stubborn return, all, I would say all but four of them are correct. The use of four is not correct, and the phrasing of being warned multiple times is not correct, but if you actually parse what the district court said, most of the time it was accurate, and that's why I would direct you to... If you do that as it may, that's not stray, though. If a judge says something four times, that's not a stray comment. Would you agree? I would, if a judge is focusing on an issue and has that issue correct, and then towards the end suggests the issue is a little bit off, I'm going with what the court has said so far, which is a clear, accurate reflection of what the record is. At the end of the day, am I going to nitpick and say, excuse me, Your Honor, you said four. Did you mean four members of law enforcement four times? At the point when a very thorough sentencing hearing in which all the factors have been correctly considered, I'm not seeing that as error or even, especially not plain error, which is what the standard here is that the defendant has to show. So I would direct the court to the cases that say we're not scrutinizing the record for every single mistake a district court... That's fair. I don't dispute that. I think my problem with this is that it becomes a statement, a different kind of statement of stubbornness and recalcitrance for her to say you were warned multiple times by law enforcement, and to repeat that two or three times, and then on other occasions to say your repeated return to criminal activity after four warnings specifying the number leaves a distinct impression that it was a, and it shows up in the sentence also, it was a distinct type of recalcitrance that he was engaged in. And that it was because it was multiple and because it was four times. I mean, that's where I'm looking at it. Do you have another case that might suggest that falls outside the one stray comment? Because I'm struggling with seeing this as a stray comment. If I may respond, Your Honor. I don't have an explicit case that fits in what Your Honor just described. Nor is there a case where a sentence was remanded for resentencing based on something like this. Where the factor that the court was discussing was accurate. I think being confronted by federal law enforcement about the conduct at issue and then choosing to resume that, that is exactly what the factor was, and that is an extremely aggravating factor here. It's on the face of the indictment. I don't think multiple times has any change in that. You know, if you're told by a federal agent you're under investigation and then you continue what you're doing, that is a huge problem. It doesn't matter if Kentucky State Police or some other law enforcement shows up another time. And that is what the court was talking about here. I think we understand the point. Thank you. Thank you very much, and we'll hear some rebuttal. Just to make sure we're on the same page, is what the government said accurate in this sense? That initially the court did have it right as to what the recalcitrance was. Like, in other words, describing the confrontation, describing the two later things, and then the mistake is how it's summarized. I mean, is that accurate? So in other words, don't use words like stray comments, but, you know, there is something that accurately says what happens. But then as you go on and the court is going back and looking at the 355-3A factors, it's the summary that gets inaccurate or, at a minimum, confusing. But I'll accept inaccurate. I don't think we can draw that conclusion on this record. And reason being, if we were to look at some of those earlier statements in isolation, then I would agree there could be an argument that the court understood what was happening because The court never describes. It never describes in detail. I know, but it never makes up. Like, then you were warned in, you know, Owensboro, and then. So the four is what gets confusing after she's pretty explicit about what had happened. I'm just trying to say, doesn't the summary have to be interpreted in connection with what she laid out? It does, but I don't think that there is anything, any particular statement made by the district court early on that clearly demonstrates an understanding when you take into context the later pages of the sentencing transcript. And specifically starting, I'd submit at really 85 is probably when the discussion really becomes to be far more robust, because at that point, the district court's actually imposing the sentence. This is well after allocution. So, again, I would agree that initially when it was discussed, it was accurate, but there is nothing overt that the district court stated to demonstrate that it had an accurate understanding of the facts. So when read in context with page 85 through page 92, it becomes clear, oh, the district court really did not have an accurate understanding of the facts. And at that point, she's already discussing aggravating factors. She's already discussing the need to promote the respect for law and Mr. Sizemore's co-defendants. By then, the train's already left the station. Well, not a terrible train. There's what we're seeking 40 months, and I can see defense counsel when they get the Bostick statement saying, I think we're good. I don't think I want to carry on anymore. And defense counsel comes back and say, what did you mean by the four repetitions? Were you saying four officers or were you saying four times recalcitrance? I could see a judge being a little annoyed by that, having laid out very carefully what happened the first time. And I can't endeavor to figure out what trial counsel was thinking when he didn't object or when he didn't ask the district court to clarify. I would submit that by then, given the tenor of the discussion, Mr. Sizemore's trial counsel was probably not keen to ask the district court to revisit the facts. But all that said, I think you have pages and pages where the district court uses statements like, Your Honor noted, the stubborn return to criminal activity, your repeated return, which presupposes multiple returns to a cockfighting rig. There were two. This is the confusion. There's two layers of confusion. One is told not to do something and then doing the same thing twice. So that's how you could think of multiple. And then what it meant to have three officers and then a later officer. I'm not denying what it says. Don't get me wrong. But you're trying to figure out. The judge clearly understood what happened. And so you're trying to figure out why these later statements. Well, I don't think the judge did understand what happens. And I think that's reflected. It never describes the other incidents that you claim she meant to be describing. She doesn't. She doesn't. So you have something very clearly laid out. And that's why I'm saying clearly laid out summary. It seems like it's an inaccurate summary. It may still prove you're right. Maybe that suffices. Inaccurate summaries suffice. I'm not sure. I think it is most demonstrated in the comparison of Mr. Sizemore and his co-defendants. And I would also, again, direct the court's attention to the First Circuit case that Wilson and Robertson both relied upon in establishing the fourth prong of plain error. In that case, the defendant had illegally entered the country on one single occasion. But the district court mistakenly stated, or the circuit court, excuse me, or the district court, sorry, mistakenly had stated he had illegally entered the country twice. And the circuit court concluded that it mattered. It mattered that whether it was a mistake or not, because the PSR was accurate and the court had it accurate earlier in the proceedings, it mattered because that misstatement contributed to the length of the sentence. Okay. Thank you very much. Thanks to both of you for your helpful briefs and oral arguments. I see, Ms. Kolka, that your court appointed counsel. We're really grateful. You did a terrific job by your client. And I don't know if you've become an expert in cockfighting, but you're definitely an expert in law. So thank you very much.  Thank you, sir. The case will be submitted.